UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW WILLIAM MAISON,

                Petitioner,

v.

THOMAS WINN,

                Respondent.

_____/

Case No: 2:19-cv-10671

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER
## DENYING PETITIONER'S HABEAS
## PETITION [1], DENYING A CERTIFICATE OF APPEALABILITY,
## AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Andrew Maison filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. ECF 1. He was sentenced to life imprisonment without parole on a murder conviction and concurrent terms of parolable life imprisonment on two other convictions in 2016. Petitioner raised claims about the sufficiency of the evidence and the effectiveness of trial counsel. For the reasons below, the Court will deny the petition. The Court will also deny a certificate of appealability and leave to proceed in forma pauperis on appeal.

## BACKGROUND

Petitioner's convictions arise from the maltreatment of his daughters,[1] which caused one of their deaths. *People v. Maison*, No. 332164, 2017 WL 5162310, at *2–6

---

[1] Besides Petitioner's daughters, there were two other children in the household who were healthy and unharmed. *Id.* at *1.

1

(Mich. Ct. App. Nov. 7, 2017). Mackenzie, age five, died after contracting pneumonia while in an extreme state of malnourishment and dehydration. *Id.* at \*2. Dr. Daniel Spitz, the chief medical examiner who conducted the autopsy, found the cause of her death to be "dehydration and malnutrition, complicated by pneumonia and related sequelae due to neglect, and that the manner of death was homicide." *Id.* The degree to which Mackenzie was dehydrated and malnourished suggested that she had been in that state for "more than just a couple of weeks." *Id.* At trial, Dr. Spitz "testified that Mackenzie . . . was not being given the basic needs to thrive and that her pneumonia developed as a consequence of her debilitated state." *Id.*

Dr. Marcus DeGraw, a pediatrician and child abuse specialist, testified that Mackenzie's severe state of malnutrition and dehydration could not have been the result of mere "picky eat[ing]," given that a child of Mackenzie's age could not have made "a decision to go on a hunger strike" to such an extreme. *Id.* Even Dr. Mark Shuman, who testified on behalf of Petitioner at trial, acknowledged that "Mackenzie was undernourished and that it was chronic, though he disputed whether her undernourished state led to pneumonia." *Id.*

When paramedics arrived at Mackenzie's home, they observed her body covered in "an extraordinary amount of bruises" and "severe irritation in her vaginal and anal area that was bloody at the time of her death."[2] *Id.* at \*3. Yet Petitioner never sought medical treatment for her. *Id.* In fact, first responders and medical

---

[2] Medical professionals described the genital injury as one that "would have been painful and obvious." *Id.* at \*5.

personnel revealed that Petitioner seemed unusually calm at the scene, ECF 6-9, PgID 677–78, and that Petitioner lied about Mackenzie's medical history, current condition, and time of death,[3] *see* ECF 6-8, PgID 553–56; ECF 6-9, PgID 676–77; ECF 6-10, PgID 818.

Makayla, age three, likewise suffered from an extreme state of malnourishment and dehydration. "When officers arrived at the home in response to a call regarding Mackenzie, they found Makayla in a state of lethargy and presenting as what they described as emaciated . . . malnourished, and . . . neglected." *Maison*, 2017 WL 5162310, at *5. Her weakened state rendered her unable to steadily walk, and she "appeared to be in pain" when picked up by an officer. *Id.* According to Dr. Dena Nazer, a child abuse pediatrician, "[a]t 3 ½ years old, Makayla was . . . the weight of an eight month old baby and the height of an 18 month-old child." *Id.* Dr. DeGraw also testified that Makayla's severe malnutrition appeared to have been ongoing "for an extended period of time." *Id.* at *6. "Dr. DeGraw testified that children who are 'picky' eaters have preferences, not ultimatums, and noted that Makayla's alleged pickiness 'magically' disappeared when she was with other people and given

---

[3] "Both Dr. Spitz and the emergency room doctor who attended Mackenzie testified that [Mackenzie] had likely been dead for a while before defendants called 911." *Id.* at *3.

normal dietary intake." [4]  *Id.* at *6. Indeed, after being removed from Petitioner's custody and placed in foster care, Makayla steadily gained strength and weight.[5] *Id.*

Additionally, testimony from investigators noted that the girls' bedroom was barren, but the other bedrooms were not. *See* ECF 6-9, PgID 625–26, 669, 703. The investigators also noted that nylon ropes and an adult belt were found in the girls' dressers, ECF 6-9, PgID 632, and Mackenzie's blood was found on the walls of the girls' bedroom closet, *see* ECF 6-9, PgID 650; ECF 6-10, PgID 869. A shoelace and nail were found on the outside of the girls' bedroom door, which could be used to lock them in their room. ECF 6-9, PgID 636–37. The investigators also found that there was sufficient food in the home, and the other children appeared healthy. *See* ECF 6-9, PgID 631, 641–42, 661–64, 688; ECF 6-8, PgID 558.

In March 2016, a jury in the St. Clair County Circuit Court convicted Petitioner of felony murder, Mich. Comp. Laws. § 750.316(1)(b), two counts of torture, § 750.85, and two counts of first-degree child abuse, § 750.136b(2). Following his convictions and sentencing, Petitioner appealed as of right with the Michigan Court of Appeals essentially raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions. *Maison*, 2017 WL 5162310.

---

[4] When the police arrived, the youngest daughter asked for water, and she drank multiple glasses and then asked for and ate an apple at the police station. *See* ECF 6-9, PgID 690–92, 702.

[5] Makayla's foster mothers testified that Makayla ate whatever food she was served, steadily gained weight, and became stronger and more verbal after she was removed from Petitioner's care. *See* ECF 6-9, PgID 714–16, 722, 725–26, 733–34.

Petitioner then applied for leave to appeal in the Michigan Supreme Court, which was denied in a standard order. *People v. Maison*, 501 Mich. 1062 (2018).

Petitioner now raises four claims in the present federal habeas petition: (1) there was insufficient evidence for the felony murder conviction and of mens rea on all counts, ECF 1, PgID 6; (2) there was insufficient evidence as to the immediate cause of death, *id.* at 7; (3) there was insufficient evidence to show the custody or physical control element of torture as defined by statute, *id.* at 9; and (4) trial counsel was ineffective for failing to request specific instructions on a lesser offense, *id.* at 10. Respondent answered the petition and argued that the petition lacked merit. ECF 5.

## LEGAL STANDARD

The Court may not grant habeas relief to a state prisoner unless his claims were adjudicated on the merits and the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court unreasonably applies Supreme Court precedent not when its application of precedent is merely "incorrect or erroneous" but when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (acknowledging the "highly deferential standard for evaluating state-court rulings" on § 2254 habeas review).

A federal court reviews only whether a state court's decision follows clearly established federal law as determined by the Supreme Court when the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court need not cite or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). And decisions by lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

Last, a federal habeas court presumes the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may successfully rebut the presumption only by clear and convincing evidence. *Id.*

6

## DISCUSSION

I.   Insufficient Evidence Claims

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions. In particular, he challenges the sufficiency of the evidence presented on intent to support all the convictions, causation for the felony murder conviction, and custody or control for the torture conviction.

The federal Due Process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than a reviewing court on habeas—both the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205

(6th Cir. 2009). And a "reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). As a result, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

Under Michigan law, a person who commits murder during the perpetration of a felony is guilty of first-degree murder. Mich. Comp. Laws § 750.316(b). The elements of felony murder are: (1) the killing of a human, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result (malice), (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute. *Matthews*, 319 F.3d at 789 (citing *People v. Carines*, 460 Mich. 750, 759 (1999)); *People v. Smith*, 478 Mich. 293, 318–19 (2007). "A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Carines*, 460 Mich. at 759 (citation omitted).

To convict a defendant of the underlying felony of first-degree child abuse, the prosecution must prove that the defendant "knowingly or intentionally cause[d] serious physical or serious mental harm to a child." Mich. Comp. Laws § 750.136b(2); *see also People v. Maynor*, 470 Mich. 289, 295 (2004); *People v. Gould*, 225 Mich. App. 79, 87 (1997). Serious physical harm is defined as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited

8

to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." Mich. Comp. Laws § 750.136b(1)(f).

A defendant commits the felony offense of torture if he or she, "with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control. . . ." Mich. Comp. Laws § 750.85(1). "Cruel" is defined as "brutal, inhuman, sadistic, or that which torments." § 750.85(2)(a). "Custody or physical control" is defined as "the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority." § 750.85(2)(b).

Additionally, as with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434 (1985), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398 (1997); *see also People v. Nowack*, 462 Mich. 392, 402–03 (2000). And for intent, "minimal circumstantial evidence is sufficient" due to the difficulty of proving a defendant's state of mind. *People v. McRunels*, 237 Mich. App. 168, 181 (1999) (citation omitted).

9

Citing state law principles and applying the *Jackson* standard, the Michigan Court of Appeals denied relief on each of Petitioner's insufficient evidence claims. The Court will address each claim in turn.

### A.   Intent

The state court's decision on Petitioner's first insufficient evidence claim is neither contrary to nor an unreasonable application of Supreme Court precedent. The prosecution presented sufficient evidence of intent to support Petitioner's first-degree felony murder, first-degree child abuse, and torture convictions. The testimony from first responders and examining physicians Dr. Nazer, Dr. Spitz, and Dr. DeGraw describing the girls' visibly emaciated conditions, dehydration, chronic and severe malnutrition, small size, and failure to thrive over a long time without known medical causes provided significant evidence that Petitioner's failure to provide sufficient nutrition and medical care for the girls was intentional and not merely negligent. *See* ECF 6-8, PgID 533, 543; ECF 6-9, PgID 689–93, 701, 707–08; ECF 6-10, PgID 783–85, 802–16, 849, 853–54; ECF 6-11, PgID 899–918; ECF 6-12, PgID 999–1000, 1009–10, 1014–16.

Petitioner's intent to harm the girls is evidenced again by the first responders and medical testimony describing Mackenzie's many bruises in various stages of healing, her red and inflamed vaginal area, and her severe respiratory illness. *See* ECF 6-8, PgID 503, 517–18, 543; ECF 6-9, PgID 586–87; ECF 6-10, PgID 784–85, 792, 801–02, 855. Moreover, the lack of proper medical care for both girls, including the lack of prompt medical care for Mackenzie in the days and hours before her

10

death, strengthens the case for a sufficient showing of intent. *See* ECF 6-10, PgID 814–15, 850–51; ECF 6-11, PgID 917–18, 932–33, 970–82; ECF 6-12, PgID 1006–08, 1112–13, 1035.

Additionally, investigators testified about the state of the girls' living conditions, which included a barren bedroom, a make-shift lock, and blood on the walls. *See* ECF 6-9, PgID 625–26, 632, 636–37, 650, 669, 703; ECF 6-10, PgID 869. Also, there was sufficient food in the home, the other children appeared healthy, *see* ECF 6-9, PgID 631, 641–42, 661–64, 688; ECF 6-8, PgID 558, and Makayla asked for and drank multiple glasses of water when officers arrived at the home, *see* ECF 6-9, PgID 690–92, 702. All these direct and circumstantial evidentiary facts bolster a finding of malicious intent.

Makayla's foster mothers testified that Makayla became stronger and more verbal after she was removed from Petitioner's care. *See* ECF 6-9, PgID 714–16, 722, 725–26, 733–34. The testimony provides evidence that the girls' poor health resulted from Petitioner's intentional maltreatment rather than because the girls were picky eaters or otherwise refusing to eat and drink a sufficient amount.

Finally, Petitioner's malicious intent is further demonstrated by the testimony of first responders and medical personnel revealing that Petitioner lied about Mackenzie's medical history, current condition, and time of death, *see* ECF 6-8, PgID 553–56; ECF 6-9, PgID 676–77; ECF 6-10, PgID 818, that Petitioner did not mention Makayla's deteriorated state, and that Petitioner seemed unusually calm at the scene, *see* ECF 6-8, PgID 522, 526, 532; ECF 6-9, PgID 677–78.

11

In sum, the testimony from the prosecution's witnesses provided sufficient evidence of intent to support Petitioner's first-degree felony murder conviction, first-degree child abuse convictions, and torture convictions. Although Petitioner challenges the jury's credibility determinations and evaluation of the evidence presented at trial, such matters are for the factfinder, not a federal habeas court, to decide. Thus, the Michigan Court of Appeals' decision reasonably applied federal precedent.

      *B.    Causation*

As for Petitioner's second insufficient evidence claim, the state court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent. The prosecution presented sufficient evidence of causation to support Petitioner's first-degree murder conviction. Under Michigan law, the causation element of a criminal offense consists of both factual causation and proximate causation. *People v. Feezel*, 486 Mich. 184, 194 (2010) (citing *People v. Schaefer*, 473 Mich. 418, 435 (2005)). "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Id*. at 194–95 (citation omitted). If the criminal result would not have occurred without the defendant's conduct, then factual causation exists. *Schaefer*, 473 Mich. at 435–36. Proximate causation "is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Feezel*, 486 Mich. at 195 (citation omitted). Proximate cause means that "[t]he victim's injury must be a 'direct and natural result' of the defendant's action."

12

*Schaefer*, 473 Mich. at 436. "If the finder of fact determines that an intervening cause supersedes a defendant's conduct 'such that the causal link between the defendant's conduct and the victim's injury was broken,' proximate cause is lacking and criminal liability cannot be imposed." *Feezel*, 486 Mich. at 195 (quotation omitted). "In assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only that he be a contributory cause that was a substantial factor in producing the harm." *People v. Bailey*, 451 Mich. 657, 676 (1996). Indeed, "all acts that proximately cause the harm are recognized by the law." *Id.*

Dr. Spitz's and Dr. DeGraw's testimony provided sufficient evidence to show that Petitioner's conduct was both the factual and proximate cause of Mackenzie's death. Their testimony proved that Mackenzie was significantly malnourished and dehydrated; that her malnutrition was not due to being a picky eater given her age; that she had a small thymus gland consistent with malnutrition; that those conditions weakened her immune system and made her more vulnerable to infection; that she had pneumonia in both lungs, a rhinovirus, and severe irritation of her vaginal area; that she was septic; and that her emaciated condition and infections, along with a lack of timely medical care, led to her death. *See* ECF 6-10, PgID 802–16, 853–54; ECF 6-12, PgID 1005–08. The testimony, if believed, was enough to demonstrate that Petitioner's failure to provide Mackenzie with sufficient nutrition and access to medical care was both the factual cause and the proximate cause of her death.

Petitioner challenges the inferences the jury drew from the trial testimony and the jury's credibility determinations. But resolving such evidentiary conflicts is the job of the factfinder at trial, not a federal court on habeas review. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011); *Jackson*, 443 U.S. at 326; *Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner's conduct caused Mackenzie's death and therefore sufficiently supported his first-degree felony murder conviction. More importantly, for purposes of federal habeas review, the Michigan Court of Appeals' decision to that effect, is reasonable.

### C.    Custody

Last, the prosecution presented sufficient evidence of custody and physical control to support Petitioner's torture convictions, and the state court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent. Petitioner, as a parent, had custody of his daughters and controlled their home environment, particularly given their young ages. To be sure, Petitioner does not contest the facts underlying this element, but he disagrees with the Michigan Court of Appeals' interpretation and application of the torture statute. Thus, he has no right to federal habeas relief on this claim. *See, e.g.*, *Brockitt v. Stoddard*, No. 1:14-

cv-939, 2014 WL 5390668, at *4–6 (W.D. Mich. Oct. 22, 2014) (denying habeas relief on similar claim).

It is well settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief is not granted for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

The Michigan Court of Appeals correctly found that while parents have the right to decide the care and discipline of their children, such a right does not extend to the point of the parents having the ability to confine or control their children to deprive them of necessities such as adequate food, water, and medical care. At minimum, the Michigan Court of Appeals' decision in this regard is reasonable.

The evidence presented at trial, viewed in a light favorable to the prosecution, was sufficient to find Petitioner guilty of first-degree felony murder, two counts of first-degree child abuse, and two counts of torture. *See* ECF 6-16, PgID 1372–98 (providing a detailed summary and analysis of the evidence supporting the jury's verdict). Thus, habeas relief is unwarranted on the insufficient evidence claims.

## II.   Ineffective Assistance of Counsel

Petitioner last asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to request a special jury instruction on causation for

15

homicide and for failing to request an instruction on the lesser included offense of involuntary manslaughter.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-prong test for determining whether counsel provided ineffective assistance. First, a petitioner must prove that counsel's performance was deficient. *Id.* at 687. The first prong requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. *Id.* Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. A petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 696.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one

that undermines confidence in the outcome of the proceeding. *Id*. On balance, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that, on habeas review, a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited based on the deference given to trial attorneys and state appellate courts in reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on Petitioner's final claim. *Maison*, 2017 WL 5162310, at *9–11. The state court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent.

First, as to trial counsel's failure to request a special causation instruction, counsel may have reasonably decided not to request a special instruction on causation because he chose to pursue a defense based on Dr. Shuman's testimony that Mackenzie's death was due to pneumonia and infection, not malnutrition and dehydration. The pursuit of an "all or nothing" type of defense is reasonable when

17

supported by some evidence. *See, e.g.*, *Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017) (denying habeas relief on a similar claim). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel's performance was deficient. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("[A]n ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken."). Petitioner also fails to show that he was prejudiced by counsel's conduct. Given Dr. Spitz's testimony (and even certain admissions by Dr. Shuman), the prosecution presented sufficient evidence to show that Petitioner's failure to properly nourish Mackenzie or seek timely medical treatment for her were the factual and proximate causes of her death. Petitioner fails to show that trial counsel was ineffective in this regard.

Second, the Michigan Court of Appeals concluded that trial counsel's failure to request an involuntary manslaughter instruction was unwarranted as a matter of state law. *See Maison*, 2017 WL 5162310, at *11. Specifically, the appellate court found that "[a]ny rational view of the evidence supports only those instructions that require malice." And given that Michigan law defines involuntary manslaughter as a crime "without malice," Petitioner's counsel was "not ineffective for failing to request [an involuntary manslaughter] instruction." *Id.* As discussed, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780;

*Oviedo*, 809 F.2d at 328. Given that state law determinations are entitled to deference on habeas review, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's failure to request an involuntary manslaughter instruction. Defense counsel cannot be deficient for failing to make a meritless request. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Petitioner therefore fails to establish that trial counsel was ineffective under the *Strickland* standard. Thus, habeas relief is not warranted on either theory of this claim.

### III.   Certificate of Appealability and In Forma Pauperis Status on Appeal

Before Petitioner can appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing and jurists would not debate the Court's denial of Petitioner's claims. Thus, the Court denies Petitioner a certificate of appealability.

Last, the Court will deny Petitioner permission to appeal in forma pauperis because an appeal of this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

19

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Petitioner's habeas petition [1] is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal in forma pauperis is **DENIED**.

**SO ORDERED.**

<div style="margin-left: 40%">

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

</div>

Dated: September 14, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 14, 2021, by electronic and/or ordinary mail.

<div style="margin-left: 40%">

s/ David P. Parker
Case Manager

</div>

20